UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| S AND V LLC, <br><br> Plaintiff, <br><br> v. <br><br> LOWE'S HOME CENTERS, LLC, <br><br> Defendant. | Case No. 19-cv-06640-KAW <br><br> **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE** <br><br> Re: Dkt. Nos. 7, 8 |

Plaintiff S and V LLC filed the instant case against Defendant Lowe's Home Centers, LLC, asserting claims related to the Easements, Covenants, Conditions, and Restrictions ("ECCRs") that govern the use of certain real property. (Compl., Dkt. No. 1-1.) Pending before the Court are Defendant's motion to dismiss and Defendant's motion to strike the attorney's fee demand. (Def.'s Mot. to Dismiss, Dkt. No. 7; Def.'s Mot. to Strike, Dkt. No. 8.) Having considered the parties' filings, the relevant legal authorities, and the arguments made at the December 19, 2019 hearing, the Court GRANTS Defendant's motions.

## I. BACKGROUND

Plaintiff and Defendant each own real property in the Commercial Center in Dublin, California. (Compl. ¶¶ 1, 13.) The Commercial Center is made up of five legal parcels, one of which is owned by Defendant. (Compl. ¶ 15.) The Commercial Center also includes Lot E, which is owned by Plaintiff and currently undeveloped. (Compl. ¶¶ 15-16.)

The Commercial Center is governed by the November 17, 2006 ECCRs between Plaintiff and Defendant. (Compl. ¶ 2.) The ECCRs identify three sets of uses: (1) uses that are automatically permitted, (2) uses that are permitted with Defendant's written permission, and (3) uses that are never permitted. (Compl. ¶ 18.) Specifically, ECCR § 3.3(a) states: "no portion of

the [Commercial] Center may be used for any of the following purposes without the written consent from all of the Consenting Parties," including theaters, health clubs, car dealerships, and hotels. (Compl., Exh. 3 ("ECCR").) ECCR § 3.3(b), in turn, identifies uses that "no portion of the [Commercial] Center may at any time be used for . . . whatsoever."

Plaintiff alleges that Defendant has violated its obligations under the ECCRs by "either not respond[ing] or automatically reject[ing] proposed uses that require [Defendant]'s consent." (Compl. ¶ 21.) For example, in June 2017, Plaintiff proposed a hotel for Lot E, which Defendant rejected without any explanation. (Compl. ¶ 22.) In April 2019, Plaintiff proposed a Volvo dealership for Lot E. (Compl. ¶ 24.) Defendant did not respond to Plaintiff until a final demand was made, at which point Defendant stated: "under no circumstances would Lowes approve a car dealership." (Compl. ¶ 25.)

On July 24, 2019, Plaintiff sent Defendant a notice of breach, complaining of Defendant's failure to study, analyze, or investigate the proposed project. (Compl. ¶ 26.) Specifically, Plaintiff asserted that: (1) Defendant had not articulated any material negative impact that Defendant would suffer, (2) Defendant had refused to respond directly to the buyer's attorney or Plaintiff to discuss the benefits of the project, (3) Defendant had refused to meet with the buyer's attorney regarding the scope of the project, and (4) Defendant had informed the City of Dublin that Defendant would not approve a car dealership under any circumstances. (Compl. ¶ 26.)

On August 21, 2019, Plaintiff filed the instant suit in state court. First, Plaintiff asserts a claim for declaratory relief that Defendant's "habitual failure to abide by its duties of good faith and fair dealing render the ECCRs approval process inequitable and oppressive," such that it is necessary for the Court to "consider striking the provision at issue so as to no longer allow [Defendant] to continue to breach its obligations under the ECCRs." (Compl. ¶¶ 32, 37.) Second, Plaintiff asserts a claim for cancellation and removal of cloud on title, based on "Section 3.3(b)[1] of the ECCRs . . . creating a cloud on title by preventing the property from being sold or developed." (Compl. ¶ 41.) Third, Plaintiff asserts a claim for breach of good faith and fair dealing based on

---

[1] Plaintiff presumably refers to § 3.3(a), which concerns uses with consent, rather than § 3.3(b), which concerns uses for which the Commercial Center can never be used.

2

Defendants' "arbitrarily withhold[ing] consent under the ECCRs" when it should otherwise "act reasonably" and approve a use if it "will benefit the Commercial Center." (Compl. ¶ 44.) Finally, Plaintiff asserts a claim for injunctive relief based on "Defendant's wrongful and continuing interference." (Compl. ¶ 51.)

On October 16, 2019, Defendant removed the case to federal court. (Dkt. No. 1.) On October 23, 2019, Defendant filed a motion to dismiss and a motion to strike the demand for attorney's fees. On November 6, 2019, Plaintiff filed an opposition to the motion to dismiss. (Pl.'s Opp'n, Dkt. No. 13.) On November 13, 2019, Defendant filed its reply. (Def.'s Reply, Dkt. No. 15.) As of the date of this order, Plaintiff has not filed an opposition to the motion to strike.

## II. LEGAL STANDARD

### A. Motion to Strike

Federal Rule of Civil Procedure 12(f) provides that, on its own or on a motion from a party, a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "The purposes of a Rule 12(f) motion is to avoid spending time and money litigating spurious issues." *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).

### B. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In considering such a motion, a court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro*, 250 F.3d at 732) (internal quotation marks omitted).

3

A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"Threadbare recitals of the elements of a cause of action" and "conclusory statements" are inadequate. *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

If the court grants a motion to dismiss, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations omitted).

## III. DISCUSSION

### A. Motion to Strike

Defendant seeks to strike Plaintiff's prayer for relief regarding attorney's fees because "[a]s a general rule, California does not permit the recovery of attorney's fees unless specifically provided for by statute or agreement." (Def.'s Mot. to Strike at 1.) Defendant asserts there is no statute or agreement that would allow for attorney's fees, and that the ECCRs do not provide for attorney's fees. (*Id.* at 2.)

Plaintiff has not filed an opposition, even after Defendant filed a notice that Plaintiff had not opposed the motion to strike. (*See* Dkt. No. 14.) Per the Court's standing order, "[t]he failure of the opposing party to file a memorandum of points and authorities in opposition to any motion shall constitute consent to the granting of the motion. (Westmore Standing Ord. ¶ 23.) Accordingly, the Court GRANTS Defendant's motion to strike as unopposed.

4

**B. Motion to Dismiss**

　　**i. Covenant of Good Faith and Fair Dealing**

Plaintiff's primary claim in this case is that the covenant of good faith and fair dealing requires that Defendant act reasonably in providing or withholding its consent to certain uses for the Commercial Center. (*See* Compl. ¶¶ 43-44; Pl.'s Opp'n at 4.) "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Carma Developers, Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 371 (1992). "The covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting the rights of another. Such power must be exercised in good faith." *Id.* at 372. At the same time, the California Supreme Court has acknowledged that "[i]nstead of defining what is consistent with good faith and fair dealing, it is more meaningful to concentrate on what is prohibited." *Id.* Moreover, "the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Id.* at 373. Thus, "the implied covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purpose." *Id.*

Here, Plaintiff argues that the covenant imposes a reasonableness requirement on Defendant in deciding whether to consent to certain uses. The express terms of the ECCRs, however, do not require that Defendant act reasonably. Instead, ECCR § 3.3(a) simply states: "During the term of this ECCR no portion of the [Commercial] Center may be used for any of the following purposes without the written consent from all of the Consenting Parties[.]" To require that Defendant exercise its discretion in a specific way would impose a new requirement on Defendant that is not stated in the contract, and the California Supreme Court has found that the covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Guz v. Bechtel Nat. Inc.*, 24 Ca. 4th 317, 349-50 (2000). This is particularly the case here where other provisions in the ECCRs do in fact impose a reasonableness requirement when granting consent; for example, ECCR § 2.2(f) requires that the location and design of certain facilities "shall not be changed without the permission of the

5

1   Consenting Parties, which consent **shall not be unreasonably** withheld, delayed, or conditioned."
2   (Emphasis added.) Likewise, ECCR § 4.2(a) requires that no buildings or structures shall be
3   allowed on any parcel "unless the plans and specifications for such structure have been approved
4   in writing by the Consenting Parties, which approval **shall not be unreasonably** withheld." Such
5   language shows the parties knew how to impose a reasonableness requirement, but chose not to do
6   so with respect to § 3.3(a). *See In re Hoffman Bros. Packing Co.*, 173 B.R. 177, 184 (B.A.P. 9th
7   Cir. 1994) (finding that a contracting party "should be bound not only by the language it chose to
8   use but also by what it chose to omit").

Plaintiff responds that the ECCRs do not contemplate that Defendant has unfettered discretion because there is no specific language giving Defendant such discretion. (Pl.'s Opp'n at 7.) As discussed above, however, to now impose a reasonableness requirement would be to impose a substantive limit on Defendant beyond the terms of the agreement. *See Guz*, 24 Cal. 4th at 349-50. Plaintiff also argues that reading the ECCRs as granting Defendant unfettered discretion would be to upend the parties' decision to create three separate categories of uses, namely uses that are always permitted, uses that are never permitted, and uses that are permitted with Defendant's consent. (Pl.'s Opp'n at 7.) Plaintiff contends that if the parties intended for Defendant's discretion to be absolute, they would not need to create a category requiring Defendant's consent. (*Id.*) Instead, the parties could have simply created two categories: permitted and unpermitted uses, and Plaintiff could seek a waiver for any unpermitted use. (*Id.*) Plaintiff, however, fails to explain how the availability of a different permission structure means that Defendant did not have absolute discretion under the current ECCRs.

Plaintiff also points to *Kendall v. Ernest Pastana, Inc.*, which imposed a reasonableness requirement in the context of subleasing. (Pl.'s Opp'n at 4-5.) There, the California Supreme Court considered a commercial lease provision which prohibited a lessee from subleasing without the lessor's written consent. 40 Cal. 3d 488, 492 (1985). The Supreme Court found that even in the absence of a provision requiring that such consent not be unreasonably withheld, the lessor cannot unreasonably or arbitrarily withhold consent to an assignment. *Id.* at 498. Significantly, however, *Kendall* explained that this was necessary in order to prevent an impermissible restraint

6

on the alienation of real property. *Id.* Per California Civil Code § 711, "[c]onditions restraining alienation, when repugnant to the interest created, are void." *Id.* The California Supreme Court explained that "this rule is not absolute in its application, but forbids only *unreasonable* restraints on alienation." *Id.* Thus, for a restraint on subleasing to be valid, the landlord's consent cannot be withheld unreasonably unless the lease gives the landlord the absolute right to withhold consent. *Id.* at 499.

Here, Plaintiff argues that *Kendall* applies because the ECCRs are an unreasonable restraint on the alienation of real property prohibited by California Civil Code § 711. (Pl.'s Opp'n at 7-8.) As Defendant correctly points out, however, California courts have long distinguished between covenants which restrain the alienation of real property and "a condition which restricts land use . . . ." *Mountain Brow Lodge No. 82 v. Toscano*, 257 Cal. App. 2d 22, 25 (1967). "Thus, conditions restricting land use have been upheld by the California courts on numerus occasions even though they hamper, and often completely impede, alienation." *Id.* at 25-26; *Taormina Theosophical Cmty., Inc. v. Silver*, 140 Cal. App. 3d 964, 974 (1983) ("Although restrictions on use by certain groups may affect the marketability of land, they are not considered restraints on alienation"); *Portola Hills Cmty. Ass'n v. James*, 4 Cal. App. 4th 289, 293 n.3 (1992), *disapproved on other grounds by Nahrstedet v. Lakeside Vill. Condo. Ass'n*, 8 Cal. 4th 361, 386 (1994) (finding that a deed restriction prohibiting the use of satellite dishes "is not a disfavored restriction on the *alienation* of property," and thus was not affected by Civil Code § 711). While the use restrictions may affect Plaintiff's ability to sell or lease the land, that does not make it a restraint on the alienation of real property. Thus, *Kendall* and its reasonableness requirement do not apply. *See Peak-Las Postitas Partners v. Bollag*, 172 Cal. App. 4th 101,105 (2009) (declining to apply *Kendall*'s definition of reasonableness because "[u]nlike *Kendall*, PSP's request for an escrow extension was not an assignment nor did it involve the substitution of new buyers").

Accordingly, the Court finds that Plaintiff's covenant of good faith and fair dealing claim fails as a matter of law, and dismisses the claim with prejudice.

### ii. Remaining Claims

The Court finds Plaintiff's remaining claims fail as well. First, Plaintiff's declaratory relief

claim is a challenge to Defendant's alleged "failure to abide by its duties of good faith and fair dealing" with respect to the enforcement of § 3.3(a). (Compl. ¶ 32.) Thus, the claim essentially seeks specific relief based on the implied covenant claim, and therefore fails for the same reasons as discussed above.

Second, Plaintiff's cancellation claim is based on the ECCR being unenforceable if Defendant "is permitted to arbitrarily withhold its consent to future uses or developments at the Commercial Center." (Compl. ¶ 39.) As further explained in Plaintiff's opposition, this claim is based on the ECCRs being void as an unreasonable restraint on alienation. (Pl.'s Opp'n at 8.) Again, a use restriction is distinguishable from a restraint on the alienability of real property. *See Mountain Brow Lodge No. 82*, 257 Cal. App. 2d at 25-36; *Taormina Theosophical Cmty.*, 140 Cal. App. 3d at 974; *Portola Hills Cmty. Ass'n*, 4 Cal. App. 4th at 293 n.3.

Finally, Plaintiff's injunctive relief claim is based on "Defendants [sic] failure to timely, reasonably or in good faith evaluate future uses for [Lot] E," as well as the alleged "cloud on title" created by § 3.3(a). As discussed above, there is no reasonableness requirement, and the use restriction does not create a restraint on alienation.

## IV.     CONCLUSION

For the reasons stated above, the Court GRANTS Defendant's motion to strike and motion to dismiss with prejudice.

IT IS SO ORDERED.

Dated: December 20, 2019

KANDIS A. WESTMORE
United States Magistrate Judge